UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL D. CARR,  )
        Plaintiff,  )
        )
        ) No. 08 C 6030
v.  )
        ) Judge John W. Darrah
JOHN E. POTTER, Postmaster General,  )
United States Postal Service,  )
        )
        Defendant.  )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Carr, brought suit against Defendant, John Potter, Postmaster General of the United States Postal Service, alleging that he was subjected to a hostile work environment and fired from his job at the Maywood, Illinois post office in retaliation for a complaint he filed with the Equal Employment Opportunity Commission ("EEO Complaint") in 2002 against his supervisors at the Evanston, Illinois post office. Before the Court are the parties' cross-motions for summary judgment.

## BACKGROUND

In 2002, Plaintiff filed a complaint in this court, alleging that he had been a victim of race discrimination when his supervisors at the Evanston post office terminated him during his 90-day probationary period as a new mail carrier in 2001. (Def.'s 56.1(a)(3) ¶ 1.) That case was settled on the eve of trial in January 2005. (Id. ¶ 2.) Plaintiff agreed to dismiss the case in exchange for a new 90-day probationary period at a different facility with different supervisors. (Id. ¶ 2.) In March 2005, Plaintiff started a new probationary period at the Maywood post office. (Id. ¶ 3.)

During the next three years, until his termination in 2008, Carr received various disciplinary notices, including suspensions and notices of removal.[1] (*Id.* ¶ 4.) The notices were issued for several reasons, including charges that Plaintiff failed to follow his supervisors' instructions and that Plaintiff failed to maintain a regular schedule. (*Id.* ¶ 5.) On May 19, 2006, Plaintiff received a disciplinary notice regarding unscheduled absences. (*Id.* ¶ 6.) The notice listed thirteen separate instances when Plaintiff took unscheduled leave, including five times that he was late for work. (*Id.* ¶ 7.) Plaintiff admits that his supervisors thought his attendance was a problem. (*Id.* ¶ 9.)

In June 2007, Plaintiff was issued another disciplinary action for failing to maintain a regular schedule. (*Id.* ¶ 10.) This notice listed 19 days, from February 15 to May 21, 2001, on which the Postal Service stated Plaintiff had taken unauthorized leave. (*Id.* ¶ 11.) These instances included eleven times that Plaintiff was late for work, including two occasions on which he was more than an hour late. (*Id.* ¶ 12.) Plaintiff received a third disciplinary notice relating to his attendance in August 2007. (*Id.* ¶ 14.) The notice lists twenty-one days on which Plaintiff took unauthorized leave from June 5 to July 28, 2007. Arriving late to work accounted for nineteen of those instances.

These disciplinary notices led to a "last-chance agreement" between Plaintiff and the Postal Service. (*Id.* ¶ 17.) In the agreement, which Plaintiff signed on December 6, 2007, the Postal Service agreed to reduce the notices of removal that had been issued to Plaintiff in May and August of 2007 to two 14-day suspensions. (*Id.* ¶ 18.) In exchange, Plaintiff agreed that he

---

[1] All notices of removal, with the exception of the last, which led to Plaintiff's termination, were reduced to suspensions. (Def.'s 56.1(a)(3), ¶ 4.)

2

would maintain a satisfactory attendance record, including reporting for work on time. (*Id.* ¶ 19.) Plaintiff agreed he would not incur more than three unscheduled absences during any six-month period. (*Id.* ¶ 20.) The agreement defined as unscheduled absence as "any absence that is not requested and scheduled at least two days in advance . . . [including] tardiness, [and] emergency leave." (*Id.* ¶ 21.) The agreement also required Plaintiff to submit medical documentation, acceptable to the Postal Service, for any sick leave. (*Id.* ¶ 22.) Absences without official leave would constitute a violation of the agreement and lead to Plaintiff's removal from the Postal Service. (*Id.* ¶ 23.) Plaintiff acknowledged that the terms of the last-chance agreement were in lieu of his termination. (*Id.* ¶ 26.)

In April 2008, the Postal Service issued Plaintiff a fourth disciplinary action for failing to maintain a regular schedule. (*Id.* ¶ 28.) The April 2008 notice of removal lists numerous days on which Plaintiff incurred unscheduled absences. (*Id.* ¶ 29.) The first two absences related to days on which Plaintiff was late to work, January 14 and 19, 2008. (*Id.* ¶ 30.) Plaintiff also took emergency annual leave on February 13, 2008, and then 81 hours of sick leave from February 14 through April 23, 2008. (*Id.* ¶ 31.) Plaintiff claims that he took the emergency annual leave and the sick leave because of an accident in which he was involved. (*Id.* ¶ 32.) Plaintiff submitted a request to have his absences approved pursuant to the Family and Medical Leave Act ("FMLA"). However, two FMLA coordinators for the Postal Service's Northern Illinois District, Shirley Taylor and Arlene Sanders, denied FMLA approval because Plaintiff had not submitted sufficient medical information. (*Id.* ¶ 34.) Neither Taylor nor Sanders knows Plaintiff or whether he ever engaged in EEO-protected activity. (*Id.* ¶ 37.) The April 2008 notice of removal also alleges that Plaintiff was absent without leave on March 26, 2008. (*Id.* ¶ 39.)

3

Plaintiff admits that the supervisor who questioned him about that day was under the impression that Plaintiff was in fact absent without leave and that Plaintiff failed to submit any documentation to prove that he was not absent without leave on that day. (*Id.* ¶ 40.)

Plaintiff filed a grievance regarding the April 2008 notice of removal. (*Id.* ¶ 41.) On June 11, 2008, a dispute resolution team comprised of a member of the Postal Service management and a representative of the union concluded, based on the information submitted by Plaintiff and the Postal Service, that the April 2008 notice of removal was issued for just cause. (*Id.* ¶ 42.) Plaintiff was terminated in August 2008. (*Id.* ¶ 51.)

Plaintiff claims that his Maywood supervisors retaliated against him by subjecting him to a hostile work environment. (*Id.* ¶ 43.) Plaintiff claims that he was threatened with being fired on numerous occasions. (*Id.* ¶ 47.) Plaintiff claims that a supervisor once berated him when Plaintiff left his route to get allergy medicine at Walgreens. (*Id.* ¶ 49.) Plaintiff complains that on one occasion in 2008, his paycheck was locked in a safe while one of his supervisors was on vacation and that Plaintiff felt that his postmaster tried to goad him into a fight over the incident. (*Id.* ¶ 50.) Finally, Plaintiff complains that after his termination, the Postal Service challenged his right to receive unemployment insurance. (*Id.* ¶ 51.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Although the moving party is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits,

4

depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the nonmoving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

A plaintiff may establish retaliation by either the direct or indirect method of proof. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir. 2009) (*Cracco*). To establish a *prima facie* case for retaliatory discharge, a plaintiff must show: (1) the plaintiff engaged in a protected activity; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Id.* Here, Plaintiff cannot establish a *prima facie* case under the direct method because he cannot show a causal connection between his EEO complaint and his termination in August 2008.

5

To establish a *prima facie* case under the indirect method, a plaintiff must show: (1) the plaintiff engaged in statutorily protected activity; (2) the plaintiff met his employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) the plaintiff was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* at 634-35. While Plaintiff can show that he engaged in a protected activity and that he suffered an adverse employment action, he cannot show either that he was meeting his employer's legitimate expectations or that he was treated less favorably than similarly situated employees. Plaintiff's extensive record of disciplinary notices for poor attendance clearly demonstrates that he was not meeting his employer's legitimate expectations. And while Plaintiff purports to identify similarly situated individuals who were treated more favorably, Plaintiff's deposition testimony reveals that Plaintiff knows nothing about their disciplinary histories, their attendance records or whether they had engaged in EEO activity.

Furthermore, even if Plaintiff could establish a *prima facie* case, it would still be his burden to refute any nondiscriminatory reasons for his termination put forth by Defendant. *See Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997). Here, Defendant has claimed that it fired Plaintiff due to his poor attendance record. Plaintiff offers no evidence to show that this was not the actual reason he was fired. Therefore, Plaintiff cannot prove that his termination was in retaliation for his 2001 EEO complaint.

Plaintiff fares no better on his hostile work environment claim. To establish a hostile work environment claim, a plaintiff must show that his work environment was both subjectively and objectively hostile. *Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999) (*Silk*). "To amount to [a] hostile workplace environment, the harassment must be so severe or pervasive as

6

to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 804 (internal quotations and modifications omitted).

Plaintiff's allegations do not reach this level. Plaintiff's primary complaint is that he was repeatedly threatened with notices of removal. However, Plaintiff admits the facts, i.e., his poor attendance, that led to these disciplinary actions. The remaining events comprising Plaintiff's hostile-work-environment claim are isolated incidents that are not severe enough to meet the standard set out in *Silk*. Finally, Plaintiff offers no evidence that any hostile work environment he faced at Maywood was in retaliation for his 2001 EEO complaint from several years before. Therefore, Plaintiff's hostile work environment retaliation claim must also fail.[2]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied; Defendant's motion for summary judgment is granted.

Dated: May 5, 2010

JOHN W. DARRAH
United States District Court Judge

---

[2] Alternatively, both of Plaintiffs' claims fail for the additional reason that Plaintiff waived these claims by signing the last-chance agreement. In that agreement, Plaintiff agreed that should he "be removed from the Postal Service for violating any of the terms and conditions of this last chance agreement, any subsequent appeal contesting that removal will be strictly limited to determining whether or not [Plaintiff] has violated the agreement."

7